JAY PRESS, Petitioner-Appellant, v. CODE ENFORCEMENT BOARD OF APPEALS OF THE CITY OF CHAMPAIGN *et al.*, Respondents-Appellees.

Fourth District   No. 4—90—0703

Opinion filed April 23, 1991.

LUND, P.J., dissenting.

Glenn A. Stanko and Todd J. Black, both of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellant.

Frederick C. Stavins, City Attorney, and Rochelle A. Funderburg, Assistant City Attorney, of Champaign, for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

Petitioner, Jay Press, appeals the judgment of the circuit court of Champaign County insofar as it affirmed a decision of the Champaign Code Enforcement Board of Appeals (Board) upholding citations of nine code violations for the building at 404 E. Healey in Champaign, Illinois. These violations were based on the provisions of chapter 20 of the 1985 National Fire Protection Association Life Safety Code (Code) (National Fire Protection Association, Life Safety Code §§20—1.1 through 20—3.4, at 101-128 through 101-129 (1985) (hereinafter Life Safety Code)), as adopted by city ordinance (Champaign, Illinois, Council Bill No. 86—87 (May 6, 1986)).

At issue in this appeal is whether the building in question falls within the term "rooming house" as used in section 20—1.1.1 of the Code, which reads as follows:

> "This chapter applies only to lodging or rooming houses providing sleeping accommodations for 16 or fewer persons. Lodging or rooming houses include buildings in which *separate sleeping rooms are rented* providing sleeping accommodations for a total of 16 or fewer persons on either a transient or permanent basis, with or without meals but without separate cooking facilities for individual occupants ***." (Emphasis added.) Life Safety Code §20—1.1.1, at 101-128.

While the courts accord deference to the interpretation placed on a statute by an agency charged with its administration, such interpretation is not binding and will be rejected if clearly erroneous. (*City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 361, 522 N.E.2d 1219, 1222.) Despite allegations of numbered rooms and individual locks on the doors, the lease in the present case, signed by 12 persons, clearly states that the house was rented to all signatories in its entirety, not by individuals renting separate sleeping rooms; the lease provides no restrictions or limitations as to where the occupants may go within this building. We hold that because the Code explicitly mandates rooms be rented out separately, the Board's interpretation of this classification was overly broad and erroneous.

The City also argues that the building must be a rooming house because it fits no other property classification in the Code. The question here, however, is not whether other Code classifications apply, but whether chapter 20 applies. Furthermore, if this property does not fall within the classifications of the Code, the City may address this matter by legislative means. We find unpersuasive this process-of-elimination approach to statutory construction.

For the reasons stated, we reverse.

Reversed.

GREEN, J., concurs.

PRESIDING JUSTICE LUND, dissenting:

I strongly dissent! The villain in this case is the greedy landlord who seeks to avoid the expense of compliance with the Life Safety Code. The trial court saw the defendant's ruse. The majority have, like ostriches,

stuck their heads in the sand. With apology to Gertrude Stein, I suggest a rooming house is a rooming house is a rooming house.

As stated at oral argument, the subject house was rented to 12 University of Illinois students for their housing. Each tenant had a key to enter the house, and each had a separate key for his individual room. In an obvious attempt to avoid the Life Safety Code, each of the 12 students was required to sign a lease for the entire premises! While it is argued that each would have an undivided interest in access to the whole house, such is pure poppycock. *Supposedly*, they received their room keys from prior tenants. However, in any case, the room keys certainly establish that they have privacy of their own rooms. Oddly enough, it was agreed at oral argument that the landlord maintained a key to the house and had access at will to the house. Is this consistent with the renters having possession of the house?

The majority opinion could result in two identical houses, each occupied by 12 students, each student with his or her own room, each with equal kitchen and bath facilities, being treated differently for purposes of fire safety code provisions, because one house is rented by the room and the other requires the execution of the house lease.

It is of further interest that each of the lessees pays a *pro rata* share of the house rent directly to the landlord each month. Calling a skunk a pussycat does not make it a lap cat! The Life Safety Code is for protection of the health and safety of rooming-house occupants. If a violation of that code is allowed and results in injury or death to occupants of the subject property, a dark cloud will long hang over this court.