(No. 72044.—

JAY PRESS, Appellee, v. THE CODE ENFORCEMENT BOARD OF APPEALS *et al.*, Appellants.

*Opinion filed June 25, 1992.*

HEIPLE, J., dissenting.

Frederick C. Stavins, City Attorney, and Rochelle A. Funderburg, Assistant City Attorney, of Champaign, for appellants.

Glenn A. Stanko and Todd J. Black, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellee.

CHIEF JUSTICE MILLER delivered the opinion of the court:

In January 1988, appellee Jay Press received notice of 47 housing code violations on his property located at 404 East Healey Street in Champaign. The only viola-

tions at issue here were based on chapter 20 of the 1985 National Fire Protection Association Life Safety Code (National Fire Protection Association, Life Safety Code §§20—1.1 through 20—3.4, at 101—128 through 101—129 (1985), as adopted by city ordinance (Champaign, Ill., Council Bill No. 86—87 (May 6, 1986)) (hereinafter Life Safety Code)). The violations alleged by the inspector were based on the belief that Press' house should be categorized as a "rooming house" under the Life Safety Code. The inspector reached this conclusion using a process-of-elimination approach by which he rejected the other possible classifications under the Code. Other possible Code classifications include hotels, dormitories, apartment buildings, and one- and two-family dwellings.

Press appealed to the Champaign code enforcement board of appeals, which concluded that his house was a "rooming house" under the Life Safety Code and upheld the alleged violations. On administrative review to the circuit court of Champaign County, the circuit judge upheld the violations at issue, again ruling that Press' building fell within the definition of "rooming house" in the Life Safety Code. Press subsequently appealed to the appellate court. The appellate court criticized the process-of-elimination approach used by the city to classify Press' house, and ruled that the definition of "rooming house" was not satisfied because "the house was rented to all signatories in its entirety, not by individuals renting separate sleeping rooms." (213 Ill. App. 3d 307, 308.) We granted the city leave to appeal (134 Ill. 2d R. 315).

The issue presented is whether the house owned by Press was correctly classified as a "rooming house" under the Life Safety Code. We conclude that the house was correctly classified and therefore reverse the judgment of the appellate court.

According to the testimony before the code enforcement board, at the time the violations were discovered, Press' house was rented to 11 University of Illinois students. The lease was signed by nine of the tenants on one day and by the other two at other times. The lease specified that the entire house was leased to all 11 tenants, each of whom was responsible for the entire rent and for the maintenance and upkeep of the premises. The tenants agreed among themselves who would sleep in what bedroom and what percentage of the rent each tenant would pay. Press testified that tenants sometimes switched rooms, and some moved in and out during the year. Press usually received rent checks from individual tenants, but sometimes one tenant would pay for another.

The house previously had been an apartment building containing 10 apartments with individual cooking facilities. When Press bought the building, he removed most of the kitchens. The house had two remaining kitchens available for use by all the tenants. None of the bedrooms had individual cooking facilities. Some of the rooms had numbers on the doors, but Press testified that he did not put them there; they were left from when the building was an apartment building. The front door of the house had a lock and each of the bedrooms could be locked. Press testified that the individual rooms were not usually locked, but the city's director of building safety testified that most were locked at the time he inspected the premises. Press testified that he originally gave front door keys to the group of tenants and bedroom keys to individual tenants. When new tenants moved in, they would receive their keys from the old tenants.

The Life Safety Code defines "rooming house" as:

"[a] building[ ] in which separate sleeping rooms are rented providing sleeping accommodations for a total of

16 or fewer persons on either a transient or permanent basis, with or without meals but without separate cooking facilities for individual occupants ***." Life Safety Code §20—1.1.1.

As a preliminary matter, we observe that in general this court gives deference to interpretations of a statute or ordinance by an agency charged with its administration. We are not, however, bound by an agency's interpretation if it is unreasonable or erroneous. *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 361.

In order for Press' building to be a "rooming house" under the Life Safety Code, it must meet three requirements: (1) separate sleeping rooms must be rented; (2) the accommodations must be for 16 or fewer persons; (3) the accommodations must not provide separate cooking facilities for individual occupants. There were 11 occupants of the building, so there is no dispute that the second requirement was met.

Press argues that because the lease specifies that the entire premises was rented to each tenant, the code's language "separate sleeping rooms are rented" is not satisfied. We do not agree. The city argues that a landlord should not be allowed to control the category of his building under the housing codes by the form of lease he chooses to adopt; rather, one should look to how the building is actually used. We believe that this is a reasonable approach. The requirements of building and safety codes vary according to the type of building. Safety experts design such codes to protect the safety of residents, and make their recommendations based not on what landlords write in their leases, but on how tenants use different types of buildings. The record shows that individual tenants had their own bedrooms and sometimes kept them locked. Thus, there is sufficient evi-

dence in the record for the city to conclude that the house was being used as a rooming house.

Press next argues that his house does not meet the definition of "rooming house" because "separate cooking facilities" were provided. Press argues that because a building can be a rooming house "with or without meals" provided by the landlord, the phrase "separate cooking facilities for individual occupants" must refer to cooking facilities available for the exclusive use of the residents rather than for the landlord to prepare meals. Because his house had two kitchens available for the use of the tenants, Press argues that the house provided "separate cooking facilities" and is therefore not a rooming house.

We reject this argument as well. Press' interpretation would make sense only if the word "individual" were left out. We believe that "separate cooking facilities for individual occupants" means facilities that are available to only one tenant. There is no dispute that Press' house had two communal kitchens and that there were no kitchens in individual bedrooms which were available to only a single tenant. This does not constitute "separate cooking facilities for individual occupants."

For the reasons expressed above, we hold that Press' house satisfies the definition of rooming house under chapter 20 of the Life Safety Code. We therefore reverse the judgment of the appellate court and affirm the judgment of the circuit court upholding the decision of the code enforcement board of appeals.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE HEIPLE, dissenting:

Jay Press owns a house in Champaign, Illinois, which he rents to college students. In January 1988, the house was rented to 11 students. Under the terms of the lease

the entire house was leased to all 11 tenants, each of whom was responsible for the entire rent and upkeep of the premises. Following an inspection of the house, he received notice of various violations of chapter 20 of the 1985 National Fire Protection Association Life Safety Code. (National Fire Protection Association, Life Safety Code §§20—1.1 through 20—3.4, at 101—128 through 101—129 (1985), as adopted by city ordinance (Champaign, Ill., Council Bill No. 86—87 (May 6, 1986)).) The violations stemmed from classifying Press' house as a "rooming house." At issue is whether Press' house falls within the Code's definition of "rooming house."

The same rules of construction which govern statutes apply to construing municipal ordinances. Strict construction is to be given to statutes which create liability where none would otherwise exist. (*Anderson v. Board of Education of School District No. 91* (1945), 390 Ill. 412, 422.) The Code in section 20—1.1.1 defines "rooming house" in pertinent part as follows:

> "Lodging or rooming houses include buildings in which *separate sleeping rooms are rented* providing sleeping accommodations for a total of 16 or fewer persons ***." (Emphasis added.) Life Safety Code §20—1.1.1, at 101—128.

In order to fall within the Code's definition of "rooming house," separate sleeping rooms must be rented. However, as the majority admits, the lease provides that the house was rented to all of the tenants in its entirety and not by the renting of separate sleeping rooms. Thus, the house does not fall with the express terms of the Code.

The majority, by contending to look at how the house is used, is rewriting Champaign's municipal ordinance. Regardless of how wise it would be to require this structure to meet the fire safety provisions applicable to rooming houses under the Life Safety Code, the City of

Champaign has not provided for this structure. The burden of redrafting and amending municipal ordnances falls upon the municipality itself. The City of Champaign by modifying its current ordinance would be able to bring Press' house within its terms and subject the house to the fire safety provisions. It is not the responsibility of this court to correct drafting errors and rewrite municipal ordinances as we may deem appropriate.

Accordingly, I respectfully dissent from the decision of the court.