KRONON MOTOR SALES, INC., Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Appellees.

First District (5th Division) No. 1—92—1032

Opinion filed October 30, 1992.

Richard W. Cosby, of Cosby & Bell, of Chicago, for petitioner.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for respondents.

JUSTICE MURRAY delivered the opinion of the court:

This appeal is brought by Kronon Motor Sales, Inc. (Kronon), on a petition for direct review of an administrative decision of the Illinois Pollution Control Board (the Board). Jurisdiction is vested in this

court by virtue of Supreme Court Rule 335 (134 Ill. 2d R. 335) and section 41 of the Illinois Environmental Protection Act (the Act) (Ill. Rev. Stat. 1991, ch. 111½, par. 1041). The Board affirmed the decision of the Illinois Environmental Protection Agency (the Agency), which disallowed reimbursement for remediation costs Kronon incurred prior to the date it notified the Illinois Emergency Services and Disaster Agency (ESDA) that a release of a petroleum product was discovered during the removal of an underground storage tank (UST). The facts, which are not in dispute, are as follows.

Kronon had a 1,000-gallon steel gasoline UST on its property, which is located on West Irving Park Road in Chicago, Illinois. The tank was installed on the property in 1976 and registered with the State Fire Marshall on April 4, 1986. On April 25, 1990, Kronon was issued a permit by the City of Chicago for the removal of the tank, and on May 8, 1990, Peter J. Hartmann Company (Hartmann), a contractor hired by Kronon, removed the tank from Kronon's property. The stated purpose for the tank removal was "upgrade to current regulations."

During the tank removal, "contamination" was observed and soil samples were collected for testing and analysis. However, ESDA was not immediately notified of the situation. In fact, ESDA was not notified of the incident of release until July 6, 1990, after Kronon apparently received the results of the soil sample testing which confirmed that petroleum, a regulated substance, had escaped from the tank and was present in the ground soil.

Kronon contends that it was unsure whether the "contamination" observed was a petroleum release until the analysis report was received. Nevertheless, Kronon apparently operated under that assumption since Professional Tank Services, Ltd. (Professional), was subcontracted by Hartmann to provide professional consulting services regarding remediation of the site and on May 11, 1990, an Illinois Generator ID Number request was filed with the Agency to obtain manifests for the disposal of land waste at CID II Landfill (CID II) in Calumet City.

On June 14, 1990, a "preliminary analysis" of the soil was reported to Kronon, the purpose of which was to determine if the sample was hazardous as defined by the regulations relating to such matters. (40 C.F.R. 261, Appendix II, Agency Record B, p.31.) The analysis, which included a free liquid test, an open cup flash point test and an E.P. toxicity test, was negative. This means that the soil was not hazardous, that there was no trace of lead in the sample, no free liquid and the flash point was greater than 200° Fahrenheit.

On June 18, 1990, Kronon received clearance to dispose of "soil contaminated with gasoline" at CID II. Excavation of the UST site was then begun under the supervision of Hartmann and Professional. After eight contaminated soil loads were removed from the site and taken to CID II, a second set of soil samples was collected on July 2, 1990. The results of the second set of soil samples was obtained from Environmental Monitoring and Technologies, Inc., on July 5, 1990. This report indicated that benzene and other contaminants were present in the soil. On July 6, 1990, Kronon notified the ESDA that a petroleum release had occurred at the UST site.

Another eight loads of soil were then excavated and disposed of at CID II, and a third set of samples was taken on July 11, 1990. On July 25, 1990, a report of the analysis done on the third set of samples showed that contaminants were still present. After an additional 20 loads of contaminated soil were disposed of at CID II, a report of the analysis of soil samples collected on July 24, 1990, revealed that the remaining site soils were below "EPA Regulated Limits."

On July 27, 1990, Kronon completed the Agency "Application for Reimbursement from Underground Storage Tank Fund for Corrective Action Costs," and on August 3, 1990, Kronon, through Professional, submitted a corrective action response and report to the Agency. On August 9, 1990, the Agency sent Kronon a letter stating that its preliminary investigation of Kronon's application for reimbursement indicated that Kronon was eligible to receive reimbursement from the State Underground Storage Tank Fund (SUSTF) for "corrective action costs, accrued on or after July 28, 1989, in excess of $10,000" (the standard deductible). The letter also noted that the corrective action costs would be reviewed separately for a determination of their allowability.

On June 19, 1991, the Agency notified Kronon that a review of the corrective action report filed August 3, 1990, indicated that no further remediation appeared necessary. However, in a letter dated July 10, 1991, nearly 11 months after the initial determination of eligibility, the Agency informed Kronon that $12,317.54 in expenses submitted by Kronon were being disallowed pursuant to section 22.18b(d)(4)(D) of the Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1022.18b(d)(4)(D)) because they were "charges incurred prior to the notification made to the Illinois Emergency Services and Disaster Agency." Other miscellaneous expenses were also disallowed for other reasons. Thus, Kronon's request for reimbursement in the amount of $48,990 (minus the standard deductible of $10,000) was granted in the amount of $26,234.51.

On August 14, 1991, Kronon filed a petition to review the Agency's decision with the Board, as set forth in the Act. (Ill. Rev. Stat. 1989, ch. 111½, pars. 1022.18b(g), 1040.) The issue was presented on cross-motions for summary judgment. On January 9, 1992, the Board, by a six-to-two decision, affirmed the Agency's decision to deny the corrective action costs prior to notification of the ESDA. On February 27, 1992, the Board denied Kronon's petition for rehearing and this timely appeal followed.

The crux of the dispute is not whether Kronon is eligible for reimbursement for corrective action taken, the Act clearly indicates that Kronon is eligible and the Agency concedes the point. However, the dispute revolves around the notice requirement as set forth in the Illinois Administrative Code and the Act. Therefore, it is necessary to review the applicable provisions of the Code and Act.

■■ Section 22.18b(d)(4)(D) of the Act states:

"(4) Requests for partial or final payment for claims under this Section shall be sent to the Agency and shall satisfy all of the following:

\* \* \*

(D) The owner or operator notified the State of the release of petroleum in accordance with applicable requirements." (Ill. Rev. Stat. 1989, ch. 111½, par. 1022.18b(d)(4)(D).)

In subpart E of title 35 of the Illinois Administrative Code, section 731.150, which was adopted effective June 12, 1989, and is entitled "Reporting of Suspected Releases," states:

"Owners and operators of UST systems shall report to the ESDA within 24 hours and follow the procedures in Section 731.152 for any of the following conditions:

(a) The discovery by owners and operators or others of released regulated substances at the UST site or in the surrounding area (such as the presence of free product or vapors in soils, basements, sewer and utility lines or nearby surface water)." 35 Ill. Adm. Code §731.150 (1992).

In subpart F of title 35, the Code states at sections 731.160 and 731.161 that "[u]pon confirmation of a release in accordance with Section 731.152 or after a release from the UST system is identified in any other manner" owners and operators must report the release to the ESDA within 24 hours. 35 Ill. Adm. Code §§731.160, 731.161 (1992).

Kronon maintains that, based upon the above-cited provisions of the Code and the Act, it was not required to contact the ESDA in

May 1990 when the UST was removed from the site and the contamination was observed. Kronon contends, and the June 14, 1990, report seems to confirm, that there was no free product or vapor present in the soil. Therefore, Kronon argues that it could only speculate that the contamination observed was a regulated substance. Kronon avers that it was only obligated to notify ESDA when it received confirmation that a release had occurred. Since confirmation did not come until Kronon received an analysis report on July 5, 1990, notification of the ESDA on July 6, 1990, conformed with the notice requirements under the regulations and full reimbursement of all corrective action costs should be granted.

In opposition, the Agency contends, and the Board agrees, that Kronon was obligated to report to the ESDA within 24 hours of May 8, 1990, when contamination was first observed. The Agency and Board maintain that because the UST contained gasoline, any observed contamination would give rise to a suspicion that petroleum (a regulated substance) had been released. Therefore, because there was a suspected release of a regulated substance, Kronon was obligated to notify the ESDA. Furthermore, timely compliance with the notice requirement was a condition precedent to full reimbursement. Consequently, corrective action costs incurred prior to ESDA notification were properly disallowed.

This is a case of first impression. The only case cited to by any party is an administrative decision, *North Suburban Development Corp. v. Illinois Environmental Protection Agency* (December 6, 1991), PCB 91—109, in which the Board, under nearly identical circumstances as in the present case, disallowed corrective action costs incurred prior to ESDA notification. Two Board members dissented in that decision also.

We note, too, that the situation encountered here is not likely to recur because the legislature amended the Act, effective September 6, 1991, to specifically state that corrective action costs incurred before providing ESDA notification shall not be eligible for payment. See Ill. Rev. Stat. 1991, ch. 111½, par. 1022.18b(d)(4)(D).

Therefore, the issue is really whether Kronon, which removed its UST in accordance with all other applicable regulations and statutes and was otherwise eligible to obtain reimbursement from the SUSTF, should be denied full reimbursement for the corrective action taken because it failed to comply with the notice requirement as interpreted by the Agency. Although we certainly sympathize with Kronon and, in addition, find the arguments presented before this court by Kronon's attorney to have been highly persuasive and

well delivered, we must affirm the Agency's interpretation of the notice requirement and uphold its decision to disallow full reimbursement.

 █ Courts must give considerable deference to interpretations of statutes and ordinances made by the agency charged with their administration. (*Spitz v. Goldome Realty Credit Corp.* (1992), 151 Ill. 2d 71.) Of course, we are not bound by the interpretation if it is unreasonable or erroneous. (*Press v. Code Enforcement Board of Appeals* (1992), 149 Ill. 2d 281, 285, 595 N.E.2d 1068.) However, in this case we do not find the Agency's interpretation of section 731.150 to be unreasonable or erroneous. Although the statute, as interpreted, seems to require an owner or operator of a UST to notify the ESDA upon both the suspected release of a regulated substance and the confirmation that a release has occurred, this is not an unreasonable demand. Nor does it impose a significant hardship upon the owner or operator of a UST to comply with such a notice requirement.

The only hardship is that in this case, Kronon's reimbursement is tied to the strict adherence to the notification requirement. As stated before, although this may seem a harsh result in this case, we cannot overturn the Agency's decision simply because we might have reached a different conclusion.

Because we must accord the Agency's decision deference and because we do not find the Agency's interpretation of the Code or the Act to be either unreasonable or erroneous, we affirm the administrative order which denied Kronon reimbursement for corrective action taken prior to notification of the ESDA.

Affirmed.

McNULTY and GORDON, JJ., concur.