Docket No. 101979.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

WILLIE B. HADLEY, Appellee, v. THE ILLINOIS DEPARTMENT
OF CORRECTIONS, Appellant.

*Opinion filed February 16, 2007.*

JUSTICE FITZGERALD delivered the judgment of the court,
with opinion.

Justices Freeman, Kilbride, Garman, and Burke concurred in the
judgment and opinion.

Justice Karmeier dissented, with opinion, joined by Chief Justice
Thomas.

**OPINION**

Plaintiff, Willie B. Hadley, an inmate at Big Muddy River
Correctional Center, filed a class action complaint in the circuit court
of Sangamon County, seeking to enjoin defendant, the Illinois
Department of Corrections (DOC or the Department), from charging
him and other allegedly indigent inmates a $2 co-payment for
nonemergency medical and dental services. See 730 ILCS 5/3–6–2(f)
(West 2004). The circuit court granted DOC's section 2–615 motion
to dismiss. 735 ILCS 5/2–615 (West 2004). A divided appellate court
reversed and remanded the cause for further proceedings. 362 Ill.
App. 3d 680. We allowed DOC's petition for leave to appeal. 210 Ill.

2d R. 315.

For the reasons discussed below, we affirm the judgment of the appellate court.

BACKGROUND

According to the allegations of the complaint, plaintiff has been incarcerated since his arrest in 1976 and is serving an indeterminate sentence of 24 to 74 years. Plaintiff claimed that during the two-year period beginning in February 2002, DOC charged his inmate trust fund account a total of $44 in co-payments for nonemergency medical and dental services. Plaintiff claimed that such charges ran afoul of section 3–6–2(f) of the Unified Code of Corrections, under which an "indigent" inmate is "exempt" from the $2 co-payment (730 ILCS 5/3–6–2(f) (West 2004)). More specifically, plaintiff alleged that DOC implemented a policy, through its administrative directives, of deducting the statutory co-payment from an inmate's trust fund account irrespective of whether funds were available, and requiring inmates who requested nonemergency medical or dental services to first sign a "Request for Payment" form authorizing DOC to deduct the co-payment from present or future funds in the inmate's account. In addition to violating the statute, plaintiff argued, this policy thrust indigent inmates into further debt. Plaintiff noted that he had filed an institutional grievance challenging DOC's practice, which was denied. Through his complaint, plaintiff sought to enjoin DOC from forcing indigent inmates to sign the request-for-payment form prior to receiving nonemergency medical and dental services.

DOC filed a section 2–615 motion to dismiss the complaint. 735 ILCS 5/2–615 (West 2004). DOC argued that section 3–6–2(f), when read in its entirety, "states that an indigent inmate must be treated the same as a solvent inmate, and is thus exempt from the requirement to pay the co-payment *before* receiving treatment," but that the "statute does not *forever* relieve the inmate of his requirement to pay." (Emphasis in original.) According to DOC:

> "Treatment will not be withheld, nor will an inmate be treated differently, because the inmate is a pauper; however, the inmate will be expected to pay the required amount when and if he is financially able to do so. Plaintiff has not alleged, and

indeed cannot claim, that he is certain to remain indigent for the entire period of his incarceration. If his financial circumstances change and he is at some point capable of remitting the co-payments he has accrued, he will be required to do so. In the event that Plaintiff remains indigent and is released with a negative balance on his trust fund account, that indebtedness will not follow him into the free world."

In response, plaintiff argued that section 3–6–2(f) nowhere states that an indigent inmate is required to pay the $2 co-payment once the inmate becomes solvent. Plaintiff relied on the plain and ordinary meaning of the word "exempt." The circuit court granted DOC's motion and dismissed the complaint. Plaintiff appealed.

The appellate court, with one justice dissenting, reversed the circuit court and remanded the cause for further proceedings. 362 Ill. App. 3d 680. The appellate court concluded that DOC's regulatory scheme was inconsistent with the statutory language. Specifically, the appellate court held that DOC's special definition of "indigent," which considers the inmate's ability to remit the co-payment "during the entire term of his or her incarceration" (20 Ill. Adm. Code §415.30(g)(3) (2005)), and DOC's practice of restricting future funds in the inmate's account (20 Ill. Adm. Code §415.30(g)(2) (2005)), conflicted with the plain language of the statute and the ordinary definitions of "indigent" and "exempt." 362 Ill. App. 3d at 686-87. The appellate court concluded that section 3–6–2(f) "gave plaintiff a clear right to an exemption from the $2 co-payment if, at the time he sought nonemergency medical or dental services, he lacked the means to pay it." 362 Ill. App. 3d at 687. Based on plaintiff's allegation that DOC charged the co-payments to his inmate trust account even though he had no funds or assets, thus putting his account balance in "negative territory," the appellate court found that "plaintiff has alleged the first of the three conditions for granting an injunction: a certain and clearly ascertainable right that needs protection." 362 Ill. App. 3d at 687. The appellate court also found that plaintiff adequately pleaded the two remaining conditions for injunctive relief–irreparable injury and lack of an adequate remedy at law–and that the circuit court erred in dismissing plaintiff's complaint. The appellate court thus reversed and remanded the matter to the circuit court for further proceedings. 362 Ill. App. 3d at 688-89. We allowed

DOC's petition for leave to appeal. 210 Ill. 2d R. 315.

ANALYSIS

I

The present appeal arises from the grant of a section 2–615 motion to dismiss, a matter subject to *de novo* review. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 364 (2004). Whether plaintiff's complaint was properly dismissed turns on whether plaintiff sufficiently alleged "a certain and clearly ascertainable right that needs protection." 362 Ill. App. 3d at 687. This, in turn, depends upon an issue of statutory interpretation, namely, whether DOC's definition of what it means to be an "indigent" inmate, and its related rules, appropriately implement section 3–6–2(f) of the Unified Code of Corrections or, as the appellate court held, conflicts with that statute. On this issue of law our review also proceeds *de novo*. *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590, 595 (2005); *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 86 (2002).

We acknowledge that where, as here, an agency is charged with the administration and enforcement of the statute, courts will give deference to the agency's interpretation of any statutory ambiguities. *Taddeo*, 216 Ill. 2d at 595; *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 48 (2002); *Carson Pirie Scott & Co. v. State of Illinois Department of Employment Security*, 131 Ill. 2d 23, 34 (1989); *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 152 (1983). Thus, "[a] court will not substitute its own construction of a statutory provision for a reasonable interpretation adopted by the agency charged with the statute's administration." *Church v. State of Illinois*, 164 Ill. 2d 153, 162 (1995), citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984). Courts, however, are not bound by an agency's interpretation that conflicts with the statute, is unreasonable, or is otherwise erroneous. *Taddeo*, 216 Ill. 2d at 595; *Press v. Code Enforcement Board of Appeals*, 149 Ill. 2d 281, 285 (1992); *Carson Pirie Scott*, 131 Ill. 2d at 34.

As in all cases of statutory interpretation, our duty is to ascertain and give effect to the intent of the legislature. *In re Donald A.G.*, 221

Ill. 2d 234, 246 (2006). The best evidence of the legislature's intent is the language of the statute, which must be given its plain and ordinary meaning. *Donald A.G.*, 221 Ill. 2d at 246; *Lulay v. Lulay*, 193 Ill. 2d 455, 466 (2000). Where the statutory language is clear, it will be given effect without resort to other aids of construction. *Quad Cities Open, Inc. v. City of Silvis*, 208 Ill. 2d 498, 508 (2004); *Lulay*, 193 Ill. 2d at 466.

With these principles in mind, we consider the statute at issue and DOC's interpretation thereof.

## II

Section 3–4–3 of the Unified Code of Corrections requires DOC to "establish accounting records with accounts for each person who has or receives money while in an institution or facility of the Department" and to "allow the withdrawal and disbursement of money by the person under rules and regulations of the Department." 730 ILCS 5/3–4–3 (West 2004)). Subject to DOC regulations, an inmate may receive funds for deposit into his or her account from outside sources or through employment with DOC. See 20 Ill. Adm. Code §205.50 (1988) (describing restrictions on funds received for deposit into a committed person's account); 730 ILCS 5/3–12–2 (West 2004) (describing the types of employment potentially available to committed persons through DOC); 730 ILCS 5/3–12–5 (West 2004) (authorizing compensation to persons performing a work assignment under rules established by DOC). An inmate may use the funds in his or her account to make purchases, primarily through the prison commissary, of tobacco products and other approved items. See 730 ILCS 5/3–7–2a (West 2004) (setting maximum prices for tobacco and nontobacco commissary items); 20 Ill. Adm. Code §210.20 (1992) ("Items sold in the committed persons' commissary shall be shown on an approved listing of standard commissary items"); *Beahringer v. Page*, 204 Ill. 2d 363, 366 (2003) (noting that the plaintiff inmate purchased approved art supplies from commissaries in the several DOC facilities where he had been housed).

In addition to the deductions DOC makes to an inmate's account for commissary purchases, section 3–6–2(f) requires DOC to deduct a $2 co-payment for certain medical and dental services. Section

3–6–2(f) states in relevant part:

"The Department shall require the committed person receiving medical or dental services on a non-emergency basis to pay a $2 co-payment to the Department for each visit for medical or dental services. The amount of each co-payment shall be deducted from the committed person's individual account. A committed person who has a chronic illness, as defined by Department rules and regulations, shall be exempt from the $2 co-payment for treatment of the chronic illness. A committed person shall not be subject to a $2 co-payment for follow-up visits ordered by a physician, who is employed by, or contracts with, the Department. *A committed person who is indigent is exempt from the $2 co-payment and is entitled to receive medical or dental services on the same basis as a committed person who is financially able to afford the co-payment.* Notwithstanding any other provision in this subsection (f) to the contrary, any person committed to any facility operated by the Juvenile Division, as set forth in subsection (b) of Section 3–2–5 of this Code, is exempt from the co-payment requirement for the duration of confinement in those facilities." (Emphasis added.) 730 ILCS 5/3–6–2(f) (West 2004).

To implement the provisions of section 3–6–2(f), DOC adopted certain administrative rules which provide, in pertinent part, as follows:

"Section 415.30 Medical and Dental Examinations and Treatment

* * *

g) Adult offenders who require non-emergency medical or dental services shall authorize the Department to deduct a $2.00 co-pay from present or future funds in his or her trust fund account prior to each visit. Non-emergency services do not include any follow-up visits determined necessary by a Department physician.

1) The co-payment shall be paid from the offender's trust fund when the services are delivered.

2) Offenders who are without funds at the time

services are delivered shall not be denied medical or dental services. The offender's trust fund account shall be restricted for the amount of co-payment and shall be paid upon receipt of future funds.

3) An offender who is found to be indigent shall be exempt from the co-payment. An offender shall be considered indigent if during the entire term of his or her incarceration the offender is without funds to pay the $2.00 co-payment." 20 Ill. Adm. Code §415.30 (2005).[1]

Under DOC's rules, an inmate's account is debited for the $2 co-payment against current funds or future funds. Thus, even if an inmate's account has no funds or insufficient funds at the time nonemergency medical or dental services are rendered, the account is debited, resulting in a negative balance. The inmate's account is "restricted" and the inmate remains liable for the co-payment, and any successive co-payments, for the entire term of his or her incarceration, be it a matter of weeks, months, or even decades. Only at discharge can an inmate become eligible for the indigence exemption. The appellate court could not square DOC's regulatory scheme with the statutory language:

"Just as a matter of pure logic, it is impossible to both charge the co-payment to an inmate's account and exempt the inmate from the co-payment. One must choose one course of action or the other. The only reasonable interpretation of section 3–6–2(f) is that DOC shall deduct the co-payment from the inmate's account *unless* the inmate is indigent, in which case DOC shall exempt the inmate from the co-payment." 362 Ill. App. 3d at 687.

DOC argues that the appellate court erred in rejecting DOC's reasonable interpretation of an ambiguous statute, and that the

---

[1]This version of section 415.30 of title 20 of the Illinois Administrative Code (see 29 Ill. Reg. 3883, eff. March 1, 2005) does not differ in any material respect from the prior version of section 415.30 that was in effect at the time of the events giving rise to the present litigation. See 21 Ill. Reg. 5911, eff. May 1, 1997. We note that the parties cite to the March 1, 2005, version. For consistency, we will do likewise.

legislative history supports DOC's interpretation. Plaintiff responds that the statute is unambiguous, but even if an ambiguity is found, the legislative history does not provide clarity. Our analysis begins, as it must, with the statutory language. See *Wauconda Fire Protection District v. Stonewall Orchards, LLP*, 214 Ill. 2d 417, 430 (2005).

The statute provides that a "committed person who is *indigent* is exempt from the $2 co-payment." (Emphasis added.) 730 ILCS 5/3–6–2(f) (West 2004). The term "indigent" is not expressly defined in the statute, but is ordinarily understood to mean "being poor usu[ally] without being destitute: IMPOVERISHED, NEEDY." Webster's Third New International Dictionary 1151 (1993). Though relevant, the dictionary definition of "indigent" does not explain what it means to be an indigent committed person for purposes of the statutory $2 co-payment.

Some insight into the legislature's intent can be gleaned from other words and phrases appearing in the same sentence of the statute. That sentence reads in its entirety: "A committed person who is indigent is exempt from the $2 co-payment and is entitled to receive medical or dental services on the same basis as a committed person *who is financially able to afford the co-payment*." (Emphasis added.) 730 ILCS 5/3–6–2(f) (West 2004). The statute thus recognizes two groups of inmates: those who are indigent, and those who are financially able to afford the co-payment. Accordingly, a committed person who is indigent must be a committed person who is *not* financially able to afford the co-payment. What this means in practice is not clear from the statutory language. For example, should an inmate's financial ability to afford the co-payment be judged solely by his account balance on the day he or she requests nonemergency medical or dental services, or should some other measure of financial ability be used? "[I]n terms of dollars or net worth, how destitute must an inmate be to qualify as 'indigent' within the meaning of section 3–6–2(f)? The legislature does not say." 362 Ill. App. 3d at 686. Thus, an ambiguity or gap exists in the statute.

We agree with the appellate court that, by implication, the legislature has delegated to DOC the authority to fill this gap. 362 Ill. App. 3d at 686; see also *Church*, 164 Ill. 2d at 161 (recognizing that the legislature may implicitly delegate to an agency "the authority to clarify and define a specific statutory provision"). Accordingly, DOC's

interpretation of what it means to be an "indigent" inmate, if reasonable, is entitled to deference by this court. See *Church*, 164 Ill. 2d at 161-62. Conversely, to the extent DOC's interpretation is contrary to the statute, that interpretation is not binding on this court and will be rejected. See *People ex rel. Birkett*, 202 Ill. 2d at 48; *Illinois Consolidated Telephone Co.*, 95 Ill. 2d at 152. As discussed below, we conclude that DOC's interpretation of section 3–6–2(f) conflicts with the statutory language.

The definition of "indigent" adopted by DOC reads in relevant part: "An offender shall be considered indigent if *** the offender is without funds to pay the $2.00 co-payment." 20 Ill. Adm. Code §415.30(g)(3) (2005). This portion of the definition mirrors the statutory language which focuses on whether the inmate is "financially able to afford the co-payment." 730 ILCS 5/3–6–2(f) (West 2004). DOC's definition, however, adds another element: "An offender shall be considered indigent if *during the entire term of his or her incarceration* the offender is without funds to pay the $2.00 co-payment." (Emphasis added.) 20 Ill. Adm. Code §415.30(g)(3) (2005). This definition of indigent, together with DOC's rule that an inmate must authorize DOC to deduct the co-payment from present or future funds, means that an inmate is always charged the $2 co-payment, irrespective of the inmate's financial ability to pay. Only at discharge can an inmate be deemed indigent for purposes of the exemption, at which point any outstanding co-payments are, to use DOC's phrasing, "written off."

DOC's regulatory scheme is problematic for several reasons. First, DOC's rules effectively exclude inmates serving life sentences from the reach of the statutory exemption. This is so because under DOC's definition of "indigent," no action is taken on the statutory exemption until discharge from the Department–a day that will never arrive for this group of inmates. Section 3–6–2(f), however, contains no exception from the indigence exemption for inmates serving life sentences. The same is true of inmates who have been sentenced to death. An agency cannot, through its rulemaking, limit the scope of the statute. *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 203 (1989).

Second, and more fundamentally, DOC's rules fail to implement the statutory exemption for any group of inmates. The statute

mandates that a "committed person who is indigent is *exempt* from the $2 co-payment." (Emphasis added.) 730 ILCS 5/3–6–2(f) (West 2004). "Exempt" means "free or released from some liability to which others are subject: excepted from the operation of some law or obligation: not subject to." Webster's Third New International Dictionary 795 (1993). Thus, pursuant to the plain language of section 3–6–2(f), a committed person who is indigent (*i.e.*, who is not financially able to afford the co-payment) is released from liability for the co-payment; is excepted from the operation of the co-payment; is not subject to the co-payment. Under DOC's rules, however, every inmate is subject to and liable for the co-payment each and every time nonemergency medical and dental services are provided, irrespective of the inmate's ability to afford the co-payment. Indeed, the inmate's account is "restricted" for the amount of the co-payment. 20 Ill. Adm. Code §415.30(g)(2) (2005). If all inmates are always subject to the co-payment, then no inmate is ever not subject to the co-payment and no exemption exists.

The fact that DOC writes off accrued co-payments at the time an inmate is discharged is not tantamount to exempting the inmate from the co-payment in the first place. To reiterate: to be "exempt" from the co-payment means that the inmate is "excepted from the operation of" the co-payment. Webster's Third New International Dictionary 795 (1993). An inmate who is charged the co-payment and remains liable for the co-payment has not been excepted from the operation of the co-payment.

The conflict between the statutory language and DOC's peculiar definition of "indigent" is exemplified in DOC's section 2–615 motion. In its motion, DOC made plain its position that even if it recognized that an inmate was indigent, or a pauper, or insolvent, the inmate's account will be debited for the co-payment and the inmate "will be expected to pay the required amount when and if he is financially able to do so." Under the statute, however, an inmate's indigence is the very condition that triggers application of the exemption. As the appellate court aptly observed:

> "The statute speaks of a present, not a future, state of affairs: '*is* indigent' and '*is* exempt'; it speaks of the inmate's financial condition at a particular point in time, when the inmate is to 'receive medical or dental services.' (Emphases added.) 730

-10-

ILCS 5/3–6–2(f) (West 2004). The statute does not say: 'A committed person who *remains indigent throughout the term of his or her imprisonment shall be exempt* from the $2 co-payment.' The statute does not say that inmates shall pay the co-payment (to quote the State's brief) '*if and when* they later have the means to do so.' (Emphasis in original)." 362 Ill. App. 3d at 687.

DOC argues that its regulatory scheme appropriately implements section 3–6–2(f). According to DOC, inmates who have immediate funds meet their statutory duty to pay the co-payment. Those who cannot make immediate payment are exempt from payment for as long as they are without funds, but are given the same nonemergency medical and dental services as those who are financially able to afford the co-payment.

DOC's argument, that it applies an exemption from immediate payment, is contrary to its own rules. As discussed above, under DOC's rules an indigence finding can only be made, and the exemption can only be applied, after the person has completed "the entire term of his or her incarceration." 20 Ill. Adm. Code §415.30(g)(3) (2005). Even if DOC's rules could be read as providing an exemption from immediate payment, the statute does not authorize such an exemption. The statute plainly mandates that if the inmate is indigent, the inmate is exempt–period.

DOC also argues that the indigence exemption must be examined in light of the other statutory co-payment exemptions, particularly the exemption for juveniles, and that when so examined, the reasonableness of its rules is apparent.

The statute, as set forth in full above, contains four exemptions from the $2 co-payment for nonemergency medical and dental services: (1) "[a] committed person who has a chronic illness *** shall be exempt from the $2 co-payment for treatment of the chronic illness"; (2) "[a] committed person shall not be subject to a $2 co-payment for follow-up visits ordered by a [Department] physician"; (3) "[a] committed person who is indigent is exempt from the $2 co-payment"; and (4) "any person committed to any facility operated by the Juvenile Division[ ] *** is exempt from the co-payment requirement for the duration of confinement in those facilities." 730 ILCS 5/3–6–2(f) (West 2004).

DOC maintains that the first two exemptions are triggered by the type of treatment rendered–a chronic illness or a follow-up visit–and that "there is no disagreement here that the General Assembly intended prisoners receiving such treatments never to be required to make a co-payment." DOC further maintains that the last two exemptions are triggered by the type of prisoner–an indigent adult inmate and a juvenile–and that the language of the two exemptions establishes that the legislature intended a distinction to be drawn between the two types of prisoners. According to DOC, juveniles housed in DOC's juvenile facilities are entitled to an exemption from the co-payment "for the duration of confinement" (730 ILCS 5/3–6–2(f) (West 2004)), but in the absence of similar statutory language applicable to indigent adult inmates, such adult inmates are not exempt "for the duration of confinement."

DOC's argument erroneously assumes that if an inmate is found to be indigent at any point during his or her incarceration, that finding must remain with the inmate for the duration of his or her confinement. The language in section 3–6–2(f) does not support DOC's once-an-indigent-always-an-indigent argument. We note, too, that the appellate court did not so hold, and that plaintiff does not argue that the statute authorizes some sort of permanent indigence exemption.

Although DOC attempts to distinguish the indigence exemption from the other three exemptions, we find nothing in the language of the statute that supports DOC's practice of considering an inmate's financial ability to afford the co-payment at discharge, rather than at or near the time nonemergency medical or dental services are rendered. We note that where an inmate pursues nonemergency treatment for a chronic condition or a follow-up visit ordered by a Department physician, DOC understands "that the General Assembly intended prisoners receiving such treatments never to be required to make a co-payment." Similarly, where a juvenile who is housed in a juvenile facility requests nonemergency medical or dental services, the juvenile is not required to make a co-payment. DOC, however, departs from this practice when the indigence exemption comes into play. Only in that instance is the inmate required to pay the co-payment, through a debit to his or her account, irrespective of whether the inmate comes within the exemption. The statutory language does

not evince an intent by the legislature that the indigence exemption operate differently than the other three exemptions.

DOC further argues that the legislative debates and policy concerns support its interpretation of the statute. During the legislative debates on House Bill 3451, which ultimately added the $2 co-payment provision and the indigence exemption to section 3–6–2(f), the following exchange occurred between Representative Pugh and Representative Bost, a sponsor of the bill:

> "Pugh: Could you tell me how an individual who is in need of medical services and does not have the ability to pay, will prove that he does not have the ability to pay, will he be judged based on his ... the monies that he has currently on the books or would it be based on a bank account that he has somewhere? Will it be based on previous inheritances that he might have had? Could you tell me exactly how an individual would be proven indigent?
>
> ***
>
> Bost: The Department already keeps those accounts and those records, and based on that, he would be able to, he or she would be able to pay out of that fund and he can also incur a negative balance so that as the [*sic*] accumulated funds, later on, that debt could be paid off.
>
> ***
>
> Pugh: So ... so you're saying that if an individual does not have the money on the books, if the individual does not have the money ... have money on his personal account, then he would be considered indigent.
>
> ***
>
> Bost: If he does not have the money in his personal account, he can not and will not be refused or denied the opportunity to go to seek medical treatment, but there will be a negative balance applied to that account." 89th Ill. Gen. Assem., House Proceedings, May 23, 1996, at 86-87 (statements of Representatives Pugh and Bost).

This brief exchange during the legislative debates does not address the only uncertainty in the statute, namely, how the indigence determination should be made. Although Representative Pugh

attempted twice to clarify the circumstances under which an inmate would be deemed indigent, his inquiry was never answered. Indeed, Representative Pugh's understanding was that "if the individual does not have the money *** on his personal account, then he would be considered indigent." 89th Ill. Gen. Assem., House Proceedings, May 23, 1996, at 86-87 (statements of Representative Pugh). Representative Bost's reference to a possible negative balance that would be paid off later when the inmate accumulated funds does not *ipso facto* demonstrate the reasonableness of DOC's rules. Whatever Representative Bost envisioned, his comment cannot supercede or undo the statute that was adopted by the General Assembly. See *Kunkel v. Walton*, 179 Ill. 2d 519, 536 (1997) (noting that "while courts give some consideration to statements by a sponsor of a bill, such statements are not controlling"); accord *People v. Burdunice*, 211 Ill. 2d 264, 270 (2004). The statute mandates that an "indigent" inmate "is exempt" from the $2 co-payment. 730 ILCS 5/3–6–2(f) (West 2004). It does not mandate or authorize a system under which an inmate's trust fund account is debited for the co-payment irrespective of whether the inmate is "financially able to afford the co-payment." 730 ILCS 5/3–6–2(f) (West 2004).

We note that it is possible to implement a system that does not do violence to the statutory language and yet still leaves open the possibility that some inmates may, at some point, have a negative balance in their trust fund accounts after a debit is made for the $2 co-payment. For example, in judging an inmate's financial ability to afford the co-payment, DOC (pursuant to properly promulgated rules) could consider the balance in the inmate's trust fund account on the day the inmate requests nonemergency medical or dental services, as well as his balance during a reasonable period of time immediately prior or after thereto. This is the method the Massachusetts Department of Correction adopted for determining whether an inmate is considered "indigent" for purposes of a mail fee waiver. The Massachusetts regulation provides:

> "Upon request for waiver of fees or cost, an inmate may be declared indigent if:
>
>> (a) At the time of the request, the inmate has, in all accounts to which he or she has access, a total amount less than or equal to ten dollars ($10.00) plus the cost or fees

sought to be waived; and

(b) At no time for the sixty days immediately preceding said request, have the inmate's accounts contained more than ten dollars ($10.00) plus the cost or fees sought to be waived. (*e.g.* request to waiver $5.00 on 7/1/98; indigent if, at no time since 5/1/98, total in accounts has been more than $15.00)." 103 Mass. Code Regs. 481.06 (2006).

See also *Reynolds v. Wagner*, 936 F. Supp. 1216, 1230-31 (E.D. Pa. 1996) (stating that the prison handbook for Berks County prison defined an indigent inmate as one who is without funds or who has not received more than $5 within a 14-day period).

Of course, DOC is under no compulsion to adopt a regulatory scheme similar to the one adopted by the Massachusetts Department of Correction. The Massachusetts regulation merely provides an example of a type of regulation that could allow for the creation of negative balances, yet still focus on an inmate's current financial ability to afford the co-payment.

DOC further argues that the reasonableness of its interpretation of section 3–6–2(f) is apparent when one considers the purpose behind the co-payment requirement. Although a statement of purpose is not found in the statute, DOC maintains that co-payment programs of this type help teach inmates to be financially responsible by encouraging them to conserve their property and order their priorities; deter abuse of health-care services; and conserve limited medical resources. See *Reynolds v. Wagner*, 128 F.3d 166, 170 (3d Cir. 1997). DOC argues that its definition of indigent, which covers a span of time–the entire period of incarceration–supports these valid penological goals by providing some assurance that the system is not abused by inmates. DOC explains that if, as the appellate court held, indigence is only determined at a point in time, *i.e.*, when nonemergency services are requested, inmates could spend down their trust fund accounts with commissary purchases and only then request nonemergency health-care services, knowing that they can claim indigent status and avoid the $2 co-payment. An inmate could also avoid the co-payment by seeking nonemergency health-care services immediately before an expected deposit into his or her account created a positive balance. In addition, without the possibility of being assessed the co-payment,

"prisoners might view going to the prison healthcare unit as nothing more than an opportunity to leave their cells or assigned areas, avoid other prison programs or restrictions, or use the service in such a way as to waste the prison's limited medical resources." Thus, DOC argues that the indigence exemption should not be tied to an inmate's current balance in his trust fund account.

We agree that if indigence is only determined with reference to the balance in an inmate's trust fund account on the day nonemergency services are requested, the potential for abuse exists, as the current balance may not truly reflect whether the inmate "is financially able to afford the co-payment." 730 ILCS 5/3–6–2(f) (West 2004). The appellate court's holding, however, is not so narrow. Although the appellate court referred to the inmate's financial status "at a particular point in time," *i.e.*, when the inmate is to receive medical and or dental services, the court went on to hold that plaintiff had a clear right to an exemption from the $2 co-payment if, at the time he sought nonemergency services, he "lacked the means to pay it." 362 Ill. App. 3d at 687. The appellate court's inquiry, like the statutory language, focuses on an inmate's current ability to pay the co-payment, but does not dictate how that determination should be made. As indicated earlier, assessing an inmate's current ability to afford the co-payment could include reviewing the inmate's account activity during some reasonable period of time immediately prior to or after the date nonemergency services are requested. This approach would minimize the opportunity for an inmate, who periodically maintained a positive account balance, to avoid the co-payment by spending down his account before seeking health-care services or seeking health-care services immediately before an expected deposit. The problem with DOC's approach, however, is that, in an effort to remove any possibility of abuse by inmates, the exemption has been swallowed up.

Under DOC's rules, the statutory co-payment requirement is imposed on all inmates regardless of whether they are "financially able to afford the co-payment." 730 ILCS 5/3–6–2(f) (West 2004). DOC's rules cannot be reconciled with the statute. Where an administrative rule conflicts with the statute under which it was adopted, the rule is invalid. See *Carson Pirie Scott*, 131 Ill. 2d at 34 (recognizing that agency action that is inconsistent with the statute must be overturned); *Ruby Chevrolet, Inc. v. Department of Revenue*, 6 Ill. 2d 147, 151

(1955) (declining to uphold agency rule that was "in clear contravention of the specific wording of the statute" under which the rule was adopted); *Greaney v. Industrial Comm'n*, 358 Ill. App. 3d 1002, 1026 (2005) (noting that "[w]henever an administrative rule conflicts with a statute, the rule will be held invalid").

Because DOC has not challenged the appellate court's reversal of the trial court's grant of DOC's section 2–615 motion on any basis other than that discussed above, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE KARMEIER, dissenting:

The majority holds that the DOC's definition of the term "indigent" contained in section 415.30(g)(3) of its regulations governing inmate health care (20 Ill. Admin. Code §415(g)(3)) conflicts with section 3–6–2(f) of the Unified Code of Corrections (730 ILCS 5/3–6–2(f) (West 2004)) because the DOC's definition, together with its rule that an inmate must authorize the DOC to deduct the co-payment from present or future funds means that, contrary to the mandate of the statute, the inmate is always subject to the co-payment, irrespective of his financial ability to afford it. Because I do not believe the regulation conflicts with the statute and that the DOC's definition of indigent is not unreasonable, I dissent.

Section 3–6–2(f) provides that the Department shall require committed persons receiving nonemergency medical or dental services to pay a $2 co-payment, but that a committed person who is indigent is exempt from the co-payment and is eligible to receive nonemergency medical or dental services on the same basis as a committed person who is financially able to afford the co-payment. 730 ILCS 5/3–6–2(f) (West 2004). Section 3–6–2(f) does not define the term "indigent."

To implement section 3–6–2(f), the DOC promulgated section 415.30(g), which provides that adult offenders who require nonemergency medical or dental services shall authorize the Department to deduct a $2 co-payment from present or future funds in his or her trust fund account. 20 Ill. Admin. Code §415(g).

Subsection (3) further provides that "[a]n offender who is found to be indigent shall be exempt from the co-payment. An offender shall be considered indigent if during the entire term of his incarceration the offender is without funds to pay the $2 co-payment." 20 Ill. Admin. Code §415(g)(3). If the inmate has no funds, or insufficient funds, at the time the nonemergency medical or dental services are requested, the inmate's account is debited, resulting in a negative balance. The inmate remains liable for the co-payment for the entire term of his incarceration, only becoming eligible for the indigence exclusion at discharge.

The majority concludes that the term "indigent" as used in section 3–6–2(f) is ambiguous because the statute is unclear as to whether the inmate's financial ability to afford the co-payment should be judged by his account balance on the day services are requested, or by some other measure. The majority acknowledges the well settled rule that where an agency is charged with the administration and enforcement of a statute, courts will give deference to the agency's interpretation of any statutory ambiguities and will not substitute its own interpretation where the agency's interpretation does not conflict with the statute or is not unreasonable. *Church v. State of Illinois*, 164 Ill. 2d 153, 161-62 (1995). The majority finds the DOC's definition of indigent to be in conflict with the statute because section 413.30(g)'s requirement that an inmate's account be charged for the co-payment at the time nonemergency medical or dental services are provided, irrespective of whether he has any funds in his account, means that he is not "exempt" from the co-payment as required by the statute. The majority's argument is unpersuasive.

The conflict between section 3–6–2(f) and regulation 415.30(g) arises only because the majority interprets the statute as meaning that an indigent inmate cannot be *charged* the co-payment. If section 3–6–2(f) is so interpreted, then the majority is correct. If, however, section 3–6–2(f) is interpreted as meaning that the inmate is not required to *pay* the co-payment, then no conflict arises because an inmate who never acquires the funds to pay the co-payment never has to pay it. Contrary to the majority's assertion, the former interpretation is not dictated by the definition of "exempt." An inmate who is charged the co-payment but who never acquires the funds to pay the co-payment and therefore never has to pay is no less free from

-18-

its operation.

Alternatively, because section 3–6–2(f)'s requirement that an indigent inmate is exempt from the co-payment is subject to multiple interpretations – being charged the co-payment as opposed to being required to pay it – it is ambiguous. The DOC, which is charged with resolving any statutory ambiguities, has implicitly chosen the latter interpretation, and this court should defer thereto. Moreover, as the DOC correctly observes, such an interpretation is clearly consonant with the legislature's intent, as demonstrated by the exchange between Representative Pugh and Representative Bost, one of the sponsors of the legislation which added the co-payment requirement and the indigence exemption to section 3–6–2(f).

I also dissent because I believe that the majority's suggestion that an inmate's ability to afford the co-payment could be determined by examining his account over some reasonable period of time before and after nonemergency medical or dental services are requested is inconsistent with the reasoning behind the majority's conclusion that section 415.30(g)(3) conflicts with section 3–6–2(f).

The DOC argues that the purpose of the co-payment program is to teach inmates financial responsibility and to deter abuse of healthcare services. The DOC maintains that its definition of "indigent" supports these goals by deterring abuse of the system by inmates. If indigence is determined only at a point in time, inmates could spend down their trust fund accounts with commissary purchases prior to requesting services, or seek such services immediately before an expected deposit.

The majority acknowledges the potential for abuse and the legitimacy of the DOC's concerns in this regard. The majority responds by suggesting that assessing an inmate's ability to afford the co-payment could include reviewing the inmate's account activity during some reasonable period of time immediately prior to or after the date nonemergency services are requested. However, this suggestion is clearly inconsistent with the majority's determination that charging an inmate's account for the co-payment if he does not have the funds to pay it denies the inmate the statutorily mandated exemption.

The majority's suggestion also leads to the questions of what

constitutes a "reasonable" period of time and who should make that determination. The answer to the second question is clear. Because the statute is ambiguous as to how an inmate's financial ability to pay is determined, it would be the responsibility of the DOC, the agency charged with implementing the statute, to determine what "reasonable" period of time should be used. I submit that the DOC has already made this determination.

In sum, there is a "conflict" between section 415.30(g)(3) and 3–6–2(f) only because the majority construes these sections in such a manner as to create one. I would defer to the DOC's interpretation of the term "indigent" an interpretation which is both reasonable and consonant with the intent of the legislature. Therefore, I respectfully dissent.

CHIEF JUSTICE THOMAS joins in this dissent.