No. 3--06–0907

Filed July 12, 2007.

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| CARITA CRANK | ) | Appeal from the Circuit Court |
| | ) | for the 9th Judicial Circuit, |
| | ) | Hancock County, Illinois |
| Petitioner-Appellee, | ) | |
| | ) | No. 90-D-60 |
| v. | ) | |
| | ) | |
| GARY CRANK, | ) | Honorable |
| | ) | Richard J. Gambrell, |
| Respondent-Appellant, | ) | Judge, Presiding. |
| | ) | |
| v. | ) | |
| | ) | |
| (The Department of Healthcare and, | ) | |
| Family Services, | ) | |
| Intervenor-Appellee). | ) | |

JUSTICE CARTER delivered the opinion of the court:

Gary M. Crank and Carita Crank filed for dissolution of their marriage in 1991. Following the agreed termination of the maintenance and child support orders, Gary asked the circuit court to calculate the arrearage he owed. The court calculated the arrearage and ordered Gary to make periodic payments of $300 a week. Gary filed a motion to reconsider with the court. The circuit court denied Gary's motion and he now appeals that ruling. We affirm the circuit court's ruling.

1

Gary and Carita Crank were married in Missouri in 1969. Throughout their 22-year marriage they had four children, the last two being born in 1976 and 1987. In 1991, Gary and Carita filed a petition for the dissolution of their marriage. The circuit court of Hancock County entered a judgment dissolving the marriage on August 1, 1991, and awarded custody of the couple's two minor children to Carita. In addition, the circuit court ordered Gary to pay child support in the amount of $272.77 per week along with spousal maintenance in the amount of $281.08 per week, with the weekly amount of maintenance to be reduced to $269.45 after 43 weeks, and then reduced again to $252.71 after 78 weeks. The maintenance was set at this level because Gary was gainfully employed as a chiropractor in Massachusetts, whereas Carita was going back to school to obtain a degree in criminal justice.

Over the ensuing years Gary's child support obligation was modified twice. In 1993 it was changed to $75 a week and in 2000 it was changed to $96 a week plus 20% of his bonuses. In 2006 the parties agreed that Gary's child support and maintenance obligations were terminated as of July 2005 and that Gary owed an arrearage. On August 9, 2006, a hearing on the motion to determine child support was held. There is no record or bystander's report as to what was said at the hearing. The circuit court issued a "Uniform Order for Support" finding that Gary owed a total arrearage of $220,209.55, consisting of $170,760.44 in unpaid child support and $49,449.11 in interest. Further, the circuit court ordered periodic weekly payment of $300 to satisfy the arrearage.

Gary filed a motion to reconsider and a hearing was held on the motion on November 1, 2006. In his motion to reconsider, Gary argued that the circuit court incorrectly identified the entire

arrearage as consisting of child support and also that the court was in error for setting his weekly payment at $300. Gary argued that $300 consisted of 60% of his weekly income, far higher than the 15% allowed by the Illinois Wage Assignment Act (740 ILCS 170/4 (West 2004)) and also that under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505(g-5) (West 2006)), the circuit court could only order the old support amount of $96 or $94.94, which was 15% of his weekly income. The circuit court accepted Gary's first contention and adjusted the arrearage calculation to show that of the $220,209.55 in total arrearages owed, $34,663.06 was child support owed to Carita, $7,000 was child support owed to the State of Illinois, $123,098.69 was maintenance owed to Carita, $5,998.69 was owed in medical arrearages, and $49,449.11 was owed in interest. However, the circuit court denied Gary's motion to reconsider, finding "that the law cited by [Gary] does not impose a restriction to the ability of the court to order the amount of payment toward the arrears." The court further found it had the power to order a variety of enforcement provisions and the ability to determine Gary's income for purposes of ordering payment on the arrearage. Gary has appealed the circuit court's order requiring him to pay $300 a week in arrearages.

ANALYSIS

On appeal, Gary contends that the circuit court erred in that it did not have the authority, posttermination, to increase his weekly payment from $96 to $300 in order to satisfy arrearages. Gary also contends that under the Wage Assignment Act the circuit court could not order him to pay periodically more than 15% of his weekly earnings. In support of his first contention, Gary argues that child support judgments are to be enforced as any other judgments. Thus, the only collection

3

powers available to Carita and the State are those set forth in section 505(g-5) of the Illinois Marriage and Dissolution of Marriage Act, under which the circuit court does not have the authority increase the periodic payment from its pretermination level. We disagree and affirm the judgment of the circuit court setting periodic payments of $300 to satisfy the arrearages.

Both parties agree on the essential facts of the case and make no issue of any factual determination, such as the calculation of arrearages or whether, under the facts of the case, the circuit court should have set the periodic payment at $300. Rather, the issue is whether, under the law, the circuit court had the authority to increase the periodic payment to satisfy arrearages, when pretermination the periodic payment for child support was $96 plus 20% of Gary's bonuses. To determine whether the circuit court had such authority, we will have to interpret the relevant statutes. Issues of statutory interpretation are a question of law and thus are reviewed under a *de novo* standard. Krautsack v. Anderson, 223 Ill.2d 541, 553, 861 N.E.2d 633, 643 (2006).

Child support judgments are to be enforced as any other judgments. In re Marriage of Metz, 233 Ill.App.3d 50, 57, 598 N.E.2d 369, 374 (1992). The issue in the present case is the power of the circuit court over a support arrearage judgment once the support obligation is terminated. In recent years, the State has passed several statutes relating to the ability to collect arrearages posttermination. They state, in relevant parts:

"When current support terminates on the date stated in the order for support, or because the child attains the age of majority or is otherwise emancipated, and the amount previously required to be paid for current support of that child automatically continues as an obligation for periodic payment toward satisfaction of unpaid

4

arrearage or delinquency as provided for by law, the obligee or public official may prepare and serve upon the obligor's payor an income withholding notice***." 750 ILCS 28/32(a) (West 2006).[1]

"If there is an unpaid arrearage or delinquency (as those terms are defined in the Income Withholding for Support Act) equal to at least one month's support obligation on the termination date stated in the order for support or, if there is no termination date stated in the order, on the date the child attains the age of majority or is otherwise emancipated, the periodic amount required to be paid for current support of that child immediately prior to that date shall automatically continue to be an obligation, not as current support but as periodic payment toward satisfaction of the arrearage or delinquency. That periodic payment shall be in addition to any periodic payment previously required for satisfaction of the arrearage or delinquency. The total periodic amount to be paid toward satisfaction of the arrearage or delinquency may be enforced and collected by any method provided by law for enforcement and collection of child support, including but not limited to withholding under the Income Withholding for Support Act." 750 ILCS 45/14(i-5) (West 2006).[2]

Further, the addition to section 505(g-5) cited by Gary as support for his contention that the circuit court may not increase periodic payment amounts posttermination to satisfy arrearages states

---

[1]Passed into law as Public Act 93-1061, § 20, effective January 1, 2005.

[2]Passed into law as Public Act 93-1061, § 25, effective January 1, 2005.

as follows:

"If there is an unpaid arrearage or delinquency (as those terms are defined in the Income Withholding for Support Act [750 ILCS 28/1 *et seq.*]) equal to at least one month's support obligation on the termination date stated in the order for support or, if there is no termination date stated in the order, on the date the child attains the age of majority or is otherwise emancipated, the periodic amount required to be paid for current support of child immediately prior to that date shall automatically continue to be an obligation, not as current support but as periodic payment towards satisfaction of the unpaid arrearage or delinquency. That periodic payment shall be in addition to any periodic payment previously required for satisfaction of the arrearage or delinquency. The total periodic amount to be paid toward satisfaction of the arrearage or delinquency may be enforced and collected by any method provided by law for enforcement and collection of child support, including but not limited to withholding under the Income Withholding for Support Act [750 ILCS 28/1 *et seq.*]." 750 ILCS 5/505(g-5) (West 2006).[3]

In cases of statutory interpretation, the court's duty is to ascertain and give effect to the intent of the legislature. Hadley v. Illinois Deptartment of Corrections, 224 Ill.2d 365, 371, 864 N.E.2d 162, 165 (2007). The best evidence of the legislature's intent is the language of the statute, which must be given its plain and ordinary meaning. Hadley, 224 Ill.2d at 371, 864 N.E.2d at 165. Where

---

[3]Passed into law as Public Act 93-1061, § 10, effective January 1, 2005.

the statutory language is clear, it will be given effect without resort to other aids of construction. Hadley, 224 Ill.2d at 371, 864 N.E.2d at 165.

The plain language of the statutes makes clear that the statutes are meant to streamline the collection of arrearages posttermination. They are to ensure that once a support order is terminated, any arrearages owed by the obligor continue to be owed. There is no mention in the statutes that the circuit court is restricted by the previous periodic payment amount when setting the new periodic payment amount to satisfy the arrearages posttermination. Rather, it allows for the periodic payment toward the arrearages to "be enforced and collected by any method provided by law for enforcement and collection of child support." 750 ILCS 5/505(g-5) (West 2006).

Even though we find the statutory language clear and unambiguous, we turn to a portion of the legislative debate on the bill to further enhance our position that the statute in no way supports Gary's contention. The purpose behind enacting these amendments was explained during legislative debate on their adoption. During a debate on the floor of the General Assembly concerning the amendments to the support statutes the following exchange was had:

> "Speaker Hannig: The Lady from Kane, Representative Lindner.
>
> Lindner: Thank you, Mr. Speaker. This Bill amends the Public Aid Code, the Illinois Marriage and Dissolution Act and the Illinois Parentage Act and states that if there is an arrearage on child support when child support is terminated or a child reaches the age of majority, then that order shall continue until the arrearage is paid.
>
> Speaker Hannig: The Lady has moved for passage of Senate Bill 2690. Is there any discussion? Then the question... excuse me, the Lady from Cook,

7

Representative Monique Davis.

Davis, M.: I'm sorry, Representative, you were saying this is the arrearage that a person who is paying child support owes?

Lindner: Correct. It... in other words, the order will continue as it is until the arrearage is paid, unless there... unless somebody makes another, you know,...

Davis, M.: Unless what?

Lindner: ...goes to court and chan... unless you go to court and have a modification." 93d Ill. Gen. Assem., House Proceedings, May 11, 2004, at 21-22 (statements of Speaker Hannig and Representatives Lindner and Davis).

The plain meaning of the language was understood and acknowledged by the legislators during the debate on the bill. The statements made by Representative Lindner during the floor debate indicate it was acknowledged that the circuit courts would have the power to make modifications to the orders posttermination and that they were not necessarily bound by the prior periodic payment amounts. The provision sets a default for posttermination support arrearage if the parties do not ask the court to set it. It does not, however, prevent the court from modifying the pretermination periodic payment amount. The plain language of the statute makes clear that its purpose is to act as a default provision for setting periodic payment amounts to satisfy an arrearage posttermination. There is no indication this statute was meant to place on the circuit court the limitations urged by Gary. Our interpretation is bolstered by the legislative debate on the bill. Therefore, we find unpersuasive Gary's argument that section 505(g-5) restricts the circuit court from increasing his periodic payment amount posttermination to satisfy an arrearage.

8

As we have already determined that section 505(g-5) places no limitation on the circuit court's ability to increase Gary's periodic payments posttermination to satisfy an arrearage, we will now turn to his contention that the circuit court is limited by the Wage Assignment Act. The Wage Assignment Act limits an assignee to collecting no more than 15% of an obligor's weekly gross earnings to satisfy a debt. 740 ILCS 170/4 (West 2004).

However, Gary is mistaken in his application of the Wage Assignment Act to the present case. The Wage Assignment Act limitation of 15% does not apply in child support/maintenance situations. Rather, that is governed by the Income Withholding for Support Act (750 ILCS 28/1 *et seq.* (West 2004)). Illinois law placed high limitations on what can be withheld to satisfy support obligations in conformity with federal law. The relevant portion of the Income Withholding for Support Act governing how much of an obligor's wages can be garnered per week for support states: "Withholding of income under this Act shall not be in excess of the maximum amounts permitted under the federal Consumer Credit Protection Act [15 U.S.C. §1601 et seq. (2000)]." 750 ILCS 28/35(c) (West 2004). Turning to the federal law, it states:

"(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed–

(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and

(B) where such individual is not supporting such a spouse or

9

dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week."   15 U.S.C. §1673(b)(2)(A), (B) (2000).

Thus, as Illinois has adopted the limits as expressed in federal law, the most that can be withheld from a weekly wage for family support purposes is 50% or 60% of the weekly earnings, depending on the circumstances, not 15%.

For the foregoing reasons, we conclude that nothing in section 505(g-5) of the Illinois Marriage and Dissolution of Marriage Act or section 4 of the Wage Assignment Act prohibits the circuit court from increasing Gary's periodic weekly payment from $96 to $300 posttermination to satisfy his support arrearage.   We therefore affirm the judgment of the circuit court.

Affirmed.

MCDADE and WRIGHT, J. J. concurring.

_____