# Illinois Official Reports

## Appellate Court

---

**Estate of Slightom v. Pollution Control Board**, 2015 IL App (4th) 140593

---

| | |
|---|---|
| Appellate Court Caption | THE ESTATE OF GERALD D. SLIGHTOM, Petitioner, v. THE POLLUTION CONTROL BOARD and THE ILLINOIS ENVIRONMENTAL PROTECTION AGENCY, Respondents. |
| District & No. | Fourth District<br>Docket No. 4-14-0593 |
| Filed | July 7, 2015 |
| Decision Under Review | Petition for review of order of Pollution Control Board, No. 11-25. |
| Judgment | Reversed; cause remanded with directions. |
| Counsel on Appeal | Patrick D. Shaw (argued), of Law Office of Patrick D. Shaw, of Springfield, for petitioner.<br><br>Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Frank Bieszczat (argued) and Clifford W. Berlow, Assistant Attorneys General, of counsel), for respondents. |
| Panel | PRESIDING JUSTICE POPE delivered the judgment of the court, with opinion.<br>Justices Turner and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1     In June 2014, the Pollution Control Board (Board) affirmed the decision of the Illinois Environmental Protection Agency (IEPA or Agency) to deny the request for reimbursement of the Gerald D. Slightom estate (Estate) from the Leaking Underground Storage Tank Fund (LUST Fund) for costs associated with cleaning up property, upon which a gas station had operated, located in Girard, Illinois. The Estate appeals, arguing the Board erred in affirming the Agency's decision. We reverse and remand with directions.

¶ 2                                    I. BACKGROUND

¶ 3     In 1991, Gerald D. Slightom, who owned the property in question, reported a release of gasoline, used oil, and heating oil from underground storage tanks on the property. All of the underground tanks were removed from the property shortly thereafter.

¶ 4     On December 6, 1991, IEPA received Slightom's application for reimbursement from the LUST Fund for corrective action costs for the property. According to the application, Slightom became aware of a release on August 30, 1991. The storage tanks had been registered with the Office of the Illinois State Fire Marshal (State Fire Marshal) on April 18, 1990. On December 20, 1991, IEPA responded to Slightom via letter, stating as follows: "It has been determined that you are eligible to seek reimbursement for corrective action costs, accrued on or after July 28, 1989, in excess of $100,000.00." The letter continued:

> "A $100,000.00 deductible applies to sites where the owner or operator had registered none of the underground storage tanks located at the site prior to July 28, 1989. (Section 22.18b(d)(3)(B)(i) of the Illinois Environmental Protection Act). The review of your Application, and/or confirmation with *** the State Fire Marshal, indicates that none of the tanks at the site were registered prior to July 28, 1989."

The property was not remediated.

¶ 5     In September 1993, Title XVI of the Environmental Protection Act (Act) (415 ILCS 5/57 to 57.17 (West 1994)), known as the Leaking Underground Storage Tank Program (LUST Program), went into effect pursuant to Public Act 88-496. The purpose of the LUST Program is as follows:

> "(1) to adopt procedures for the remediation of underground storage tank sites due to the release of petroleum and other substances regulated under this Title from certain underground storage tanks or related tank systems; (2) to establish and provide procedures for a [LUST] Program which will oversee and review any remediation required for leaking underground storage tanks, and administer the [LUST] Fund; (3) to establish [a LUST] Fund intended to be a State fund by which persons who qualify for access to the [LUST] Fund may satisfy the financial responsibility requirements under applicable State law and regulations; (4) to establish requirements for eligible owners and operators of underground storage tanks to seek payment for any costs associated with physical soil classification, groundwater investigation, site classification and corrective action from the [LUST] Fund; and (5) to audit and approve corrective action efforts performed by Licensed Professional Engineers." 415 ILCS 5/57 (West 2012).

Public Act 88-496 repealed sections 22.18b and 22.18c of the Act (415 ILCS 5/22.18b, 22.18c (West 1992)), which had been the law regarding eligibility requirements and disbursements from the LUST Fund as it existed at that time. See Pub. Act 88-496 (eff. Sept. 13, 1993). Under the repealed law, IEPA applied the deductible to an award of LUST Funds. Under Public Act 88-496, the State Fire Marshal became responsible for determining the deductible.

¶ 6    In 1997, after Title XVI was in effect, section 732.603(b) of the Board's administrative rules regarding Petroleum Underground Storage Tanks was amended by adding the language "or the Agency." See 35 Ill. Adm. Code 732.603(b)(1), amended at 21 Ill. Reg. 3617 (eff. July 1, 1997). The amended section read: "Any deductible, as determined by the [State Fire Marshall] or the Agency, shall be subtracted from any amount approved for payment by the Agency or by operation of law ***." 35 Ill. Adm. Code 732.603(b)(1), amended at 21 Ill. Reg. 3617 (eff. July 1, 1997). In 2002, section 732.603 of the Board's administrative rules was amended again, adding the following provision: "Where more than one deductible determination is made, the higher deductible shall apply." 35 Ill. Adm. Code 732.603(b)(4), amended at 26 Ill. Reg. 7119 (eff. Apr. 29, 2002). (These rules were later codified at 35 Ill. Adm. Code 734.615, adopted at 30 Ill. Reg. 5090 (eff. Mar. 1, 2006).)

¶ 7    In September 2007, 14 years after Title XVI went into effect, Gerald Slightom died. In November 2007, Slightom's Estate contacted CSD Environmental (CSD), a consulting firm, to determine whether the property at issue could be remediated so as to obtain a "No Further Remediation" letter for less than $15,000. Shane Thorpe, a senior project manager for CSD, reviewed the online LUST incident tracking database administered by IEPA, which, according to the Estate's brief, "informed Thorpe that very little work had been performed at the property." Thorpe also reviewed the State Fire Marshal's online database and response to a Freedom of Information Act (FOIA) (5 ILCS 140/1 et seq. (West 2006)) request. He found no evidence of a prior eligibility and deductibility determination in the State Fire Marshal's records. As a result, Thorpe believed the Estate would be eligible for a $15,000 deductible.

¶ 8    The Estate retained CSD to apply to the State Fire Marshal for an eligibility and deductibility determination. The Estate's agreement with CSD was contingent on the Estate receiving a deductible of $15,000 or less. The State Fire Marshal determined on February 6, 2008, the Estate would be eligible to seek reimbursement from the LUST Fund, subject to a $10,000 deductible. The State Fire Marshal forwarded a copy of its decision and the application materials to IEPA.

¶ 9    Based on the State Fire Marshal's deductible determination, the Estate executed an election to proceed as "owner" of the property. The "Election to Proceed as 'Owner' " form stated:

"I understand that by making this election I become subject to all of the responsibilities and liabilities of an 'owner' under Title XVI of the Environmental Protection Act and the Illinois Pollution Control Board's rules at 35 Ill. Adm. Code 734. I further understand that, once made, this election cannot be withdrawn."

IEPA approved the Estate's election to proceed as "owner," stating in part:

"As the new owner, you may be eligible to access the [LUST] Fund for payment of costs related to remediation of the release. For information regarding eligibility and the deductible amount to be paid, please contact *** the State Fire Marshal ***."

¶ 10    On March 12, 2008, IEPA informed the Estate the Stage I Site Investigation Plan was approved pursuant to the Estate's certification. The letter also stated: "Please be advised that, if

you do not meet the eligibility requirements as determined by \*\*\* the State Fire Marshal, you may not be entitled to payment from the [LUST] Fund for costs incurred." The Stage I work revealed contamination was still present on the property.

¶ 11 On January 29, 2009, IEPA sent a letter to the Estate, stating in part:

"As a result of [IEPA's] review of the application for payment [for work done in the period from February 11, 2008, to October 2, 2008], a voucher for $19,239.08 will be prepared for submission to the Comptroller's Office for payment as funds become available based upon the date [IEPA] received the application for payment. Subsequent applications for payment that have been or are submitted will be processed based upon the date of receipt by [IEPA]. This constitutes [IEPA's] final action with regard to the above application for payment."

The deductible amount of $10,000 was withheld from your payment."

¶ 12 The Estate also submitted a series of Stage 3 investigation plans and budgets. These Stage 3 investigations were intended to determine the extent of offsite contamination onto neighboring property. After the extent of offsite contamination had been determined, a site investigation completion report was submitted and conditionally approved on July 8, 2010. IEPA also approved $82,057.28 in actual Stage 3 costs plus handling charges.

¶ 13 On July 19, 2010, the Estate applied for payment of $83,912.58. As of August 4, 2010, the LUST Incident Tracking Database showed a $10,000 deductible applied to the site.

¶ 14 However, upon review, IEPA determined a $100,000 deductible, not a $10,000 deductible, should be applied to the remediation work pursuant to IEPA's 1991 deductible determination. On October 29, 2010, IEPA issued a decision, finding a voucher could not be prepared for submission to the Comptroller's Office for payment. The denial letter stated:

"Pursuant to 35 Ill. Adm. Code Part 734.615(b)(4)[,] where more than one deductible determination has been made, the higher deductible shall apply. On December 20, 1991[,] the [Agency] issued an Eligibility and Deductibility Determination of $100,000.00 for this site. A second Eligibility and Deductibility Determination of $10,000.00 was issued on February 6, 2008[,] by the \*\*\* State Fire Marshal. The [Agency] has determined that the $100,000.00 deductible applies to this site."

¶ 15 In December 2010, the Estate appealed IEPA's decision to the Board. In September 2013, IEPA issued a new decision, approving payment in the approximate amount of the original application for payment. According to the Agency's new decision:

"Re-review of the October 29, 2010[,] decision is warranted under information presented in an appeal filed with the [Board] December 6, 2010[,] and assigned case number PCB 2011-25 \*\*\*.

\*\*\*

This letter addresses all issues presented in the aforementioned appeal in favor of the applicant. As a result of [the Agency's] re-review of this application for payment, a voucher for $83,908.73 will be prepared for submission to the Comptroller's Office for payment."

Shortly thereafter, the Estate's consultant received a check for $83,908.73, which was deposited.

¶ 16    IEPA moved to dismiss the Estate's appeal to the Board as moot. The Estate opposed the motion because its claim for attorney fees was not moot. The Board denied IEPA's motion, holding IEPA was without jurisdiction to reconsider its earlier decision.

¶ 17    After a hearing, the Board affirmed IEPA's original decision to allow a $100,000 deductible, with one member dissenting.

¶ 18    This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    The primary issue in this case is the amount of deductible the Estate is required to pay before it can access payment from the LUST Fund. After the State Fire Marshal notified the Estate a $10,000 deductible would be applied, the Estate began the process of remediating the property. When the Estate applied to IEPA for final payment from the LUST Fund, IEPA informed the Estate the $100,000 deductible it had prescribed to Gerald Slightom in 1991 would be applied regardless of the $10,000 deductible set by the State Fire Marshal. On administrative appeal, the Board agreed with IEPA's determination a $100,000 deductible applied in this case.

¶ 21    The Board noted the State Fire Marshal erred in applying a $10,000 deductible pursuant to section 57.9(b)(1) of Title XVI of the Act (415 ILCS 5/57.9(b)(1) (West 2008)) as it read on February 6, 2008. However, the Board recognized this deductible determination was not appealed and constituted a final determination. The Board found IEPA's $100,000 deductible determination, which it made on December 20, 1991, was correct based on the law in effect in 1991 (see Ill. Rev. Stat. 1989, ch. 111½, ¶ 1022.18b(d)(3)(B)(i) (repealed 1993)). Because IEPA's 1991 deductible determination was not appealed, the Board stated it was faced with "two conflicting final agency determinations."

¶ 22    The Board held, "under the circumstances of this case, the earlier [IEPA] decision, and the correct decision, applies." According to its decision:

>        "In its 'Election to Proceed as Owner,' the Estate elected to 'become subject to all of the responsibilities and liabilities of an "owner" under Title XVI of the Environmental Protection Act and the Illinois Pollution Control Board's rules at 35 Ill. Adm. Code Part 734.' [Citation.] The Estate also argues that it elected to become an owner in reliance on [the State Fire Marshal's] $10,000 deductibility determination. [Citations.] Taking the Estate's position that it elected to proceed under Title XVI of the Act and Part 734 of the Board's regulations, the Estate subjected itself to the language of 35 Ill. Adm. Code 734.615(b), which sets forth rules applying to deductibles.
>
>        As discussed above, Mr. Slightom was assigned a $100,000 deductible determination, and the Estate was assigned a $10,000 deductible determination. The two deductible amounts apply to the same incident number at the same site. [Citation.]
>
>        The Estate has elected to proceed under Part 734 of the Board's regulations. [Citation.] The language of Part 734.615(b) anticipates that deductibles may have been issued by [the State Fire Marshal] or [IEPA]. *See* 35 Ill. Adm. Code 734.615(b)(1) ('Any deductible, *as determined by the* [*State Fire Marshal*] *or* [*IEPA*], must be subtracted from any amount approved for payment by [IEPA] or by operation of law, or ordered by the Board or courts.') (emphasis added). Further, '[o]nly one deductible

must apply per occurrence.' 35 Ill. Adm. Code 734.615(b)(2). 'Where more than one deductible determination is made, the higher deductible must apply.' 35 Ill. Adm. Code 734.615(b)(4). In this case, there have been two deductible determinations made for the same incident. The language of Part 734.615(b)(4) is clear and the $100,000 deductible applies to the site." *Estate of Slightom*, Ill. Pollution Control Bd. Op. 11-25, at 16 (June 19, 2014).

¶ 23 The Board is correct the language of its administrative rule called for the $100,000 deductible to be applied. Section 734.615(b) states:

"b) The following rules must apply regarding deductibles:

1) Any deductible, as determined by the [State Fire Marshall] or [IEPA], must be subtracted from any amount approved for payment by [IEPA] or by operation of law, or ordered by the Board or courts;

2) Only one deductible must apply per occurrence;

3) If multiple incident numbers are issued for a single site in the same calendar year, only one deductible must apply for those incidents, even if the incidents relate to more than one occurrence; and

4) Where more than one deductible determination is made, the higher deductible must apply." 35 Ill. Adm. Code 734.615(b), adopted at 30 Ill. Reg. 5090 (eff. Mar. 1, 2006).

The question is whether this is a valid rule pursuant to the rulemaking authority provided to the Board by the General Assembly.

¶ 24 " '[A]n administrative agency is a creature of statute[;] any power or authority claimed by it must find its source within the provisions of the statute by which it is created.' " *Granite City Division of National Steel Co. v. Illinois Pollution Control Board*, 155 Ill. 2d 149, 171, 613 N.E.2d 719, 729 (1993) (quoting *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill. 2d 540, 551, 370 N.E.2d 223, 228 (1977)). Section 57.14A (415 ILCS 5/57.14A (West 2008)) concerns administrative rules governing Title XVI. It states:

"(a) The Agency shall propose and the Board shall adopt amendments to the rules governing the administration of this Title to make the rules consistent with the provisions herein.

(b) Until such time as the amended rules required under this Section take effect, the Agency shall administer this Title in accordance with the provisions herein." 415 ILCS 5/57.14A (West 2008).

¶ 25 An agency's decision on a question of law is not binding on a reviewing court. Our review of a question of law is independent and not deferential to the agency. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210, 886 N.E.2d 1011, 1018 (2008). In other words, our standard of review is *de novo*. Our supreme court has stated:

"As in all cases of statutory interpretation, our duty is to ascertain and give effect to the intent of the legislature. [Citation.] The best evidence of the legislature's intent is the language of the statute, which must be given its plain and ordinary meaning. [Citations.] Where the statutory language is clear, it will be given effect without resort to other aids of construction. [Citations.]" *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 371, 864 N.E.2d 162, 165 (2007).

"Where an administrative rule conflicts with the statute under which it was adopted, the rule is invalid." *Id.* at 385, 864 N.E.2d at 173.

¶ 26　　　　Title XVI of the Act is clear the State Fire Marshal is responsible for making eligibility and deductible determinations. Section 57.9(c) of Title XVI states:

"Eligibility and deductibility determinations shall be made by *** the State Fire Marshal.

(1) When an owner or operator reports a confirmed release of a regulated substance, *** the State Fire Marshal shall provide the owner or operator with an 'Eligibility and Deductibility Determination' form. The form shall either be provided on-site or within 15 days of *** the State Fire Marshal receipt of notice indicating a confirmed release. The form shall request sufficient information to enable *** the State Fire Marshal to make a final determination as to owner or operator eligibility to access the [LUST] Fund pursuant to this Title and the appropriate deductible. The form shall be promulgated as a rule or regulation pursuant to the Illinois Administrative Procedure Act by *** the State Fire Marshal. Until such form is promulgated, *** the State Fire Marshal shall use a form which generally conforms with this Act.

(2) Within 60 days of receipt of the 'Eligibility and Deductibility Determination' form, *** the State Fire Marshal shall issue one letter enunciating the final eligibility and deductibility determination, and such determination or failure to act within the time prescribed shall be a final decision appealable to the *** Board." 415 ILCS 5/57.9(c) (West 2008).

Section 57.8 of Title XVI (415 ILCS 5/57.8 (West 2008)) also makes clear IEPA's responsibilities as to its processing of payment applications, stating in relevant part:

"(a) Payment after completion of corrective action measures. The owner or operator may submit an application for payment for activities performed at a site after completion of the requirements of Sections 57.6 and 57.7, or after completion of any other required activities at the underground storage tank site.

(1) In the case of any approved plan and budget for which payment is being sought, the Agency shall make a payment determination within 120 days of receipt of the application. Such determination shall be considered a final decision. *The Agency's review shall be limited to generally accepted auditing and accounting practices. In no case shall the Agency conduct additional review of any plan which was completed within the budget, beyond auditing for adherence to the corrective action measures in the proposal.* If the Agency fails to approve the payment application within 120 days, such application shall be deemed approved by operation of law and the Agency shall proceed to reimburse the owner or operator the amount requested in the payment application. However, in no event shall the Agency reimburse the owner or operator an amount greater than the amount approved in the plan.

\* \* \*

(4) Any deductible, *as determined pursuant to *** the State Fire Marshal's eligibility and deductibility final determination in accordance with Section 57.9*, shall be subtracted from any payment invoice paid to an eligible owner or operator.

Only one deductible shall apply per underground storage tank site." (Emphases added.)

Nowhere in Title XVI is the Agency given the authority to apply a deductible it, as opposed to the State Fire Marshal, determined to be appropriate.

¶ 27    As a result, the administrative rule in question in this case (35 Ill. Adm. Code 734.615(b)(4), adopted at 30 Ill. Reg. 5090 (eff. Mar. 1, 2006)) is invalid insofar as it allows the Agency to apply a deductible the Agency determined to be appropriate as opposed to the deductible the State Fire Marshal determined to be appropriate when a party has elected to proceed pursuant to Title XVI of the Act. The Estate chose to proceed pursuant to Title XVI.

¶ 28    We note neither the administrative rule in question (35 Ill. Adm. Code 734.615(b)(1), adopted at 30 Ill. Reg. 5090 (eff. Mar. 1, 2006)) nor its predecessor rule (35 Ill. Adm. Code 732.603(b), amended at 21 Ill. Reg. 3617 (eff. July 1, 1997)), each of which allow IEPA's deductible determination to be considered, was in effect when Title XVI of the Act became law in 1993. Because the Agency's decision to apply the $100,000 deductible and the Board's decision to affirm the Agency's decision were based on an administrative rule contrary to the clear language of Title XVI, we hold the Board erred in affirming the Agency's decision and find the $10,000 deductible determined by the State Fire Marshal should have been applied based on the facts in this case.

¶ 29    Because we are reversing the Board's determination the Agency correctly applied a $100,000 deductible, we remand this case to the Board to consider the Estate's request for reimbursement of legal defense costs pursuant to section 57.8(*l*) of Title XVI (415 ILCS 5/57.8(*l*) (West 2008)).

¶ 30                    III. CONCLUSION

¶ 31    For the reasons stated above, we reverse the Board's decision and remand for further proceedings consistent with this opinion.

¶ 32    Reversed; cause remanded with directions.